# THE OMAHA NATIONAL BANK

*v.*

# THE FIRST NATIONAL BANK OF ST. PAUL.

1.   LETTER OF CREDIT—*extent of liability thereon.*   A bank gave a letter of credit to a person, guaranteeing the payment of drafts which might be drawn by the latter on a firm named in the letter, to the amount of $14,-000, the letter providing that endorsements might be made thereon   The person to whom the letter was given, made a draft for $6000, which was endorsed on the letter.   He then drew for $2000, which was also endorsed on the letter.   This draft was forwarded for collection to the bank giving the guaranty, which was advised by letter that it was drawn under the letter of guaranty.   The holder of the letter then made a draft for $4000,

which was not endorsed on the letter, nor, in sending the bill for collection to the same party as before, was any reference made to the letter of guaranty; but the draft was paid by the drawees. He then drew for $6000, the draft purporting on its face to be drawn against the letter of credit, which was returned to the bank which gave it, with this draft, for collection. This last draft was protested. All the drafts except the first were drawn in favor of the same party. In a suit by the latter upon the guaranty, to recover the amount of the draft for $6000, which was protested, it was *held*, the defendant was not liable, because, on the payment of the previous drafts, amounting to $12,000, it was exonerated from liability on its guaranty, except to the extent of $2000, the residue of the amount guaranteed.

2. However different the rule might have been had the last draft been sold to a person who had no knowledge of the prior draft for $4000, which was not endorsed on the letter of credit, and who should purchase on the faith of that letter, yet, in the case of the plaintiff, who had knowledge thereof, the omission of such endorsement could not avail to charge the guarantor beyond the amount specified in its letter of credit.

3. RECOVERY *under the common counts.* In such case the plaintiff could not recover, on the common counts, even to the extent of $2000, the residue of the amount named in the letter of credit. The defendant's liability arose only from the guaranty, and that should have been declared upon specially.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. FULLER & SMITH, for the appellant.

Messrs. THOMPSON & BISHOP for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

On the 14th of September, 1868, the First National Bank of St. Paul issued to C. W. Nash the following letter of guaranty:

> "FIRST NATIONAL BANK, ST. PAUL, MINN.,  
> *Sept.* 14, 1868.

" *To whom it may concern:*

The bearer, Chas. W. Nash, Esq., whose signature is herewith, may wish to draw drafts upon Messrs. Merriam & Wilder

of this city, for a sum not exceeding fourteen thousand dollars ($14,000), and the same will be duly guaranteed by this bank. Endorsements may be placed on this letter of advice.

Signature of                    Respectfully,

C. W. NASH.              J. E. THOMPSON, Pt."

On the 19th day of September, 1868, Nash drew a bill for $6000, to the order of the State Savings Association in St. Louis, on Merriam & Wilder, which was endorsed on the letter of guaranty.

On the 26th day of September, 1868, he drew another bill on Merriam & Wilder, in favor of the Omaha National Bank, the plaintiff herein, for $2000, which was also endorsed on the letter. This draft was forwarded for collection to the defendant, the First National Bank of St. Paul, with a letter, advising that it was drawn under the letter of guaranty. The draft itself made no reference to the guaranty.

On the 19th of December, 1868, Nash drew another bill, for $4000, in favor of the plaintiff, on Merriam & Wilder, which was also forwarded to the defendant for collection, and duly paid by the drawees. This bill was precisely like the preceding, with the exception of the date and amount. The plaintiff, however, in sending the bill, made no reference to the letter of guaranty, nor was the bill endorsed on the letter.

In July, 1869, Nash drew another draft, for $5000, in favor of the plaintiff, which was also sent to the defendant for collection, returned protested, and charged by the plaintiff to Nash, who had, in the meantime, engaged in an extensive business at Omaha, in the way of government contracts, keeping his account with the plaintiff. On the trial, the cashier of the plaintiff testified, that this bill was also drawn on Merriam & Wilder; but in his affidavit, subsequently made in support of the motion for a new trial, he swore that, on returning to Omaha, he found it was drawn on Wilder alone. In the view we take of the case, however, this draft becomes immaterial.

On the 31st of December, 1869, Nash drew on Merriam & Wilder another draft, in favor of plaintiff, for $6000, to make good his bank account.  This draft purported on its face to be drawn against the letter of credit, and having been forwarded, like the others, to the defendant for collection, was returned protested.  With this draft was sent the original letter of guaranty, which was returned to the plaintiff with the words "guaranty withdrawn January 27, 1870," written upon it.  It appears, from the correspondence between the two banks, that Merriam & Wilder instructed the defendant not to pay this draft, and agreed to hold it harmless against all loss.  Some stress is laid upon this fact by plaintiff's counsel, but we do not perceive that it affects the legal liability of the defendant.

This suit was brought upon the guaranty, to recover the amount of this draft for $6000.  If the draft of the 19th of December, for $4000, when paid, exonerated the defendant from liability on its guaranty to that extent, it is manifest there can be no recovery in this suit.  There would remain a liability only to the extent of $2000, and the defendant could not be required to pay a draft for $6000.  The Superior Court held the draft for $4000 must be so applied, and so instructed the jury—thus causing a verdict for the defendant.  The plaintiff appealed.

It was proven on the trial, by the president and cashier of the plaintiff, that it is a universal custom among bankers, when a bill is drawn on the faith of a letter of credit, to either advise in the body of the draft, or in the letter transmitting it, that the bill is so drawn.  That was not done in reference to the $4000 draft.  It is conceded, by counsel for appellant, that, under the terms of the letter of guaranty, in this case, the liability of the defendant would have been discharged as soon as Merriam & Wilder had paid the drafts of Nash to the extent of $14,000, if drawn under the letter of guaranty and endorsed thereon.  It is, however, insisted, in a very ingenious argument, that, as the bill for $4000 was not endorsed on

the letter of credit, and as no reference was made to the guaranty, either in the body of the bill, or in the letter transmitting it for collection, the defendant would not have been liable for the payment of that bill by virtue of the guaranty, and can not claim that its liability was discharged to the extent of this bill, upon its payment by the drawees. In this argument we can not concur.

What was the undertaking of the defendant? It was expressed in a written instrument, and in terms not ambiguous. It was, simply, that Merriam & Wilder should pay drafts, drawn upon them by Nash, to the extent of $14,000; and if they should not, the bank would pay, but would not be liable beyond that sum. Before the bill in controversy was drawn, the defendant had collected $12,000 from Merriam & Wilder, on bills drawn upon them by Nash, and had transmitted the proceeds to the payees. The very terms of the defendant's undertaking had then been complied with to the extent of $12,000, and to that extent it might hold itself discharged from its liability, unless a state of facts should be shown, rendering it necessary, in the maintenance of justice, to carry the undertaking of the defendant beyond its strict letter, by saying that it should not be permitted to treat the $4000 draft as falling within the terms of its contract. If, for instance, the draft for $4000, not having been endorsed upon the letter of guaranty, Nash had presented that letter to a banker who knew nothing of that draft, and had sold to him his draft for $6000, being the amount apparently unexhausted upon the letter, it might have been contended, with great force, that, as the defendant had collected the former drafts, and remitted their proceeds, without seeing that the $4000 draft was endorsed upon the letter of credit, it had been guilty of such carelessness as to preclude it from setting up that draft against a person dealing with Nash, without any knowledge, or means of knowledge, of its existence.

But it is precisely at this point that the plaintiff's case breaks down. The plaintiff knew, when it received the draft in suit, that Merriam & Wilder had paid, as the defendant agreed they

should pay, the drafts of Nash to the extent of $12,000. When the plaintiff forwarded to defendant the $2000 draft, it advised the latter that the bill was drawn by virtue of the letter of guaranty. The $4000 draft was drawn a short time thereafter, and in precisely the same terms; but the letter transmitting it said nothing of the letter of guaranty. Yet, the defendant had a right to presume that the plaintiff took that draft, as it had taken the former one, on the faith of the letter, and to insist that, so far as the plaintiff was concerned, the guaranty was discharged to the extent of $12,000. It is said, the plaintiff did not take that draft on the credit of the guaranty. It is unnecessary to inquire whether it discounted it on the credit of Nash, or that of the defendant. It knew the draft fell within the terms of that letter, and that, when it should be collected and accounted for by the defendant, the latter would have the right to consider its guaranty discharged to that extent, and to adjust its dealings with Merriam & Wilder, upon that basis. From that time, the plaintiff could claim no right, upon discounting a draft drawn by Nash on Merriam & Wilder, to be protected as a purchaser might be who had bought such draft in ignorance that the bill for $4000 had ever been drawn. The plaintiff can only appeal to the letter of the contract. It occupies no vantage ground. It has been cognizant of whatever has been done, and has been in no respect misled by the defendant. It knew the defendant had only guarantied the payment by Merriam & Wilder of bills drawn by Nash, to the extent of $14,000, and that they had paid such bills to the extent of $12,000. On what ground, then, can this plaintiff claim the guaranty shall be so construed as to cover another draft for $6000?

It is urged that the defendant could not have been compelled to pay the $4000 draft, if Merriam & Wilder had not done so, because it was not endorsed on the letter of guaranty. Without deciding whether the letter of guaranty should receive that construction, it is sufficient to say, if that draft had not been paid by Merriam & Wilder, the plaintiff and Nash,

by endorsing it upon the letter of guaranty, could, undoubtedly, have enforced its payment by the defendant. The provision in the letter, that " endorsements may be placed on this letter of advice," was intended, we suppose, to secure the defendant from being called upon to pay drafts discounted upon the faith of the letter, and in ignorance that the amount specified in the letter had already been exhausted. This was a proper precaution; and conceding that the defendant might have declined to pay the $4000 draft, until endorsed on the letter of guaranty, it could waive this right, without injury to itself, so long as Nash should deal only with persons cognizant that such a draft had been drawn and paid. This was what it in substance did. It received for collection a draft drawn by Nash on Merriam & Wilder, from a party aware of the guaranty. Such drafts it had agreed should be paid. It collected the draft and remitted the proceeds. It might have been more prudent, with reference to the possible dealings of Nash with other persons, to require the endorsement of the draft upon the letter; but such prudence was not necessary in reference to the present plaintiff. It is more than probable that the defendant supposed an endorsement was made, but that was an act to be done by the drawer and payee, and, as against them, it could not affect the defendant's rights whether the act was performed or omitted. They had the power in their own hands to compel the defendant to respond upon its guaranty for the amount of the draft, by placing an endorsement, at any time, on the letter in their possession; and because the draft was paid without such endorsement, the plaintiff can not be permitted to say that the defendant can take no benefit from its payment.

Much of what we have said, applies to the argument based upon the evidence of the custom among bankers, when a draft is discounted on the faith of a letter of guaranty, to give notice of that fact to the guarantor. Admitting that to be the custom, we are of opinion, for the reasons already given, that it can not affect the decision of the present case. The payment

of the draft for $4000, by Merriam & Wilder, was a payment within the terms of the guaranty, whether the letter in which plaintiff sent that draft to the defendant alluded to the guaranty or not.

We have not reviewed any of the authorities cited by counsel, because they really furnish but little aid in the determination of the case.    Though various questions may be raised, the controlling one is, whether, before this draft was drawn, the defendant had discharged itself from liability upon its guaranty to the extent of $12,000, as against this plaintiff. It seems to us plain, that, to that extent, its contract had been performed, and the plaintiff knew it.

If the defendant had given to Nash a letter, stating that he had $14,000 in its vaults, which would be paid upon his drafts, and that such drafts could be endorsed upon the letter of credit, and if the plaintiff, knowing that the defendant had already paid $12,000 on the drafts of Nash, though upon drafts making no allusion to the letter and not endorsed upon it, should discount another draft for $6000, and claim payment by virtue·of the letter, could we hesitate as to the judgment that should be given?    The actual case is not substantially dissimilar from the one supposed.    The defendant had promised to the public that the drafts of Nash, on certain persons, to the extent of $14,000, should be paid.    They had· been drawn and paid to the extent of $12,000, when the draft in controversy was drawn, and that fact was known to the plaintiff.    As to it, the contract was discharged, except as to the surplus of $2000, and that can not be recovered in this suit.    It is claimed by appellant's counsel, that the plaintiff should have been permitted to recover, at least, the $2000 on the common counts.    This, however, can not be done.    The defendant's liability arises only from the guaranty, and this must be declared upon specially.

*Judgment affirmed.*